IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PATRICIA L. SCUGGINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-CV-522-JED-PJC |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, Patricia L. Scuggins, seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* For the reasons discussed below, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

**I. Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous

---

[1] Effective January 23, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of the Social Security Administration and is substituted as defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *see, e.g., Wall v. Astrue,* 561 F.3d 1048, 1052 (10th Cir. 2009). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and quotation omitted).

Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the claimant's impairments are compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the Administrative Law Judge ("ALJ") proceeds to determine the claimant's residual functional capacity ("RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e); see 20 C.F.R. §§ 404.1545, 416.945. At Step Four, the claimant must establish that he does not retain the RFC to perform his past relevant work, if any. *See* 20 C.F.R. § 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant

numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See* 20 C.F.R. §§ 404.1566, 416.966. Disability benefits are denied if the Commissioner meets this burden at Step Five. *See* 20 C.F.R. § 404.1520(a)(4)(v), 416.920(a)(4)(v).

Judicial review of the Commissioner's determination is limited in scope to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052 (quotation and citation omitted). Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

## II. Background

Plaintiff, then a thirty-two-year-old female, filed her application for Title XVI benefits on October 3, 2013. (R. 272-76). She alleged a disability onset date of June 1, 2013.[2] (R. 272). She alleged that she is disabled due to "Mental disorders

---

[2] In her decision, the ALJ noted that plaintiff had two prior applications. Plaintiff filed her first application, for Title II and Title XVI benefits, on August 3, 2009, alleging a disability onset date of December 31, 2004. (R. 91). After initial denial and reconsideration, an ALJ issued a decision denying benefits on July 29, 2011. *Id.* Plaintiff did not appeal that decision. *Id.* Plaintiff filed her second application, for Title XVI benefits only, on October 2011, alleging a disability onset date of August 4, 2009, the day following her first application. *Id.* That application was denied initially and on reconsideration, and an ALJ issued a

heavy kidney not normal." (R. 304). Plaintiff's claims for benefits were denied initially on February 3, 2014, and on reconsideration on April 17, 2014. (R. 182-216, 220-23, 227-29). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held a hearing on January 7, 2015. (R.141-91). The ALJ issued a decision on March 9, 2015, denying benefits and finding plaintiff not disabled because she was able to perform other work. (R. 88-111). The Appeals Council denied review, and plaintiff appealed. (R. 1-7; dkt. 2).

The ALJ found that plaintiff had not engaged in any substantial gainful activity since the application date. (R. 93). The ALJ found at Step Two that plaintiff had severe impairments of "cervical spine spondylosis; diabetes mellitus; obesity; major depressive disorder; generalized anxiety disorder; border intellectual functioning or learning disorder." *Id.* The ALJ determined that plaintiff's impairments of carpal tunnel syndrome, hearing loss, post-traumatic stress disorder, bipolar disorder, and schizoaffective disorder were non-severe. (R. 93-95).

At Step Three, the ALJ found that plaintiff's impairments did not meet or medically equal the severity of any listing. (R. 95-98). The ALJ gave special consideration to Listing 1.04 and the policies regarding diabetes mellitus and obesity in evaluating plaintiff's physical impairments. (R. 96). In evaluating plaintiff's mental impairments, the ALJ considered the "paragraph B" criteria and found that plaintiff had mild limitations in the area of activities of daily living

---

decision denying benefits on May 31, 2013. *Id.* Plaintiff did not appeal that decision. *Id.*

and moderate limitations in the areas of social functioning and concentration, persistence, and pace. *Id.* Based on those limitations, the ALJ evaluated the severity of plaintiff's mental impairments against Listings 12.04, 12.05, and 12.06, giving particular attention to Listing 12.05 for intellectual disability. (R. 97-98). The ALJ noted that plaintiff's high school test scores were "low" in the areas of reading and writing; however, plaintiff did graduate from high school and had also received vocational training. (R. 98). Accordingly, plaintiff did not meet Listing 12.05. *Id.*

The ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform medium work with the following limitations: "The claimant is limited to simple routine tasks, and she is able to perform superficial and incidental work-related interaction with coworkers and supervisors, but should have no significant public interaction required for completion of job tasks." *Id.* In reaching that finding, the ALJ considered the medical evidence and plaintiff's own testimony. (R. 98-105). Based on the RFC findings, the ALJ determined that plaintiff was unable to perform her past relevant work. (R. 105). However, the ALJ concluded that, based on plaintiff's age, education, work experience, and RFC, plaintiff could perform the medium, unskilled work of order filler (1,800,000 jobs in the national economy); press machine operator (35,600 jobs in the national economy); and dry cleaner helper (239,000 jobs in the national economy. (R. 106). Accordingly, the ALJ found that plaintiff was not disabled. *Id.*

### III. Analysis

On appeal, plaintiff raises three points of error: (1) that the ALJ did not properly consider plaintiff's obesity; (2) that the ALJ erred in evaluating the medical evidence; and (3) that the ALJ did not conduct a proper credibility analysis. (Dkt. 15).

**A.     Obesity**

Plaintiff argues that the ALJ did not properly consider obesity as a severe impairment in analyzing plaintiff's RFC. *Id.* Plaintiff contends that the ALJ did not include any limitations in the RFC to explain how plaintiff's severe impairment of obesity impacts her functioning and did not apply SSR 02-01p. *Id.* The Commissioner argues that the ALJ specifically cites to SSR 02-01p in assessing the severity of plaintiff's obesity and relies on specific medical evidence in concluding that plaintiff's obesity did not prevent plaintiff from performing the physical requirements of medium work. (Dkt. 17).

At step three, in addition to considering Listing 1.04, the ALJ stated that she "has also placed emphasis on SSR 02-lp: *Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity* (Sept. 12, 2002), and the combined effects of obesity with the musculoskeletal impairments, and any additional and cumulative effects of the obesity on the claimant's impairments." (R. 96). The ALJ concluded that plaintiff's obesity, even when considered in conjunction with diabetes mellitus, did not establish that plaintiff met or medically equaled a listing. *Id.*

The ALJ also evaluated the medical evidence relevant to the issue of obesity in assessing plaintiff's RFC. The ALJ noted plaintiff's height and weight, as presented in plaintiff's testimony and in the consultative examiner's report. (R. 98, 100). In discussing the consultative examiner's opinion, the ALJ noted plaintiff's weight did not factor into the examination's results. (R. 100). Although plaintiff was 5'2" and weighed 241 pounds in December 2013, the date of the examination and approximately six months after she alleged she became disabled, her weight did not negatively impact her strength, her range of motion, or her gait. *Id.*

The ALJ discussed the treatment notes from plaintiff's treating physician, Dr. Jeannette Ramos-Fast, who began a treatment relationship with plaintiff in September 2011. (R. 101). Dr. Ramos-Fast treated plaintiff with respect to a number of health issues, including obesity, diabetes, and neck and wrist pain. *Id.* Initially, Dr. Ramos-Fast diagnosed plaintiff with uncontrolled diabetes, but by December 2012, plaintiff reported that she was dancing daily for exercise. *Id.* In April 2013, plaintiff reported that she was continuing to dance daily and was losing weight. *Id.* Plaintiff's examination was normal, and she reported no pain. *Id.* The treatment notes indicate that plaintiff reported continuing weight loss and controlled diabetes in August and December 2013. *Id.* In June 2014, Dr. Ramos-Fast noted that plaintiff had "no edema, no arthritis, no back pain, no joint pain, no myalgia, no dizziness, no vision changes, no weakness, no numbness, no anxiety, and no depression." (R. 102).

The ALJ also considered two CT scans of plaintiff's cervical spine, taken in August 2012 and July 2013, both of which showed minor degenerative changes. (R. 100). The ALJ found that these minor changes would not prevent plaintiff from performing medium work. Additionally, although plaintiff was treated for sensory loss in her left calf and pain in her left knee and quadricep in April 2014, the examining orthopedist did not cite obesity as the source of the issue and recommended only conservative treatment, in the form of anti-inflammatories and strengthening exercises. (R. 102).

The ALJ concluded that the medical records supported an RFC for medium work. (R. 98). The ALJ specifically relied upon the consultative examining physician's report and Dr. Ramos-Fast's treatment notes, which both address plaintiff's obesity, in reaching that conclusion.

In considering obesity, "[a]n ALJ must consider 'the combined effects of obesity with other impairments' and 'evaluate each case based on the information in the case record.'" Arles v. Astrue, 438 F. App'x 735, 740 (10th Cir. 2011) (quoting SSR 02-1p) (unpublished). Furthermore, even if the ALJ's analysis is not perfect, the Tenth Circuit has held that where "we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012).

Contrary to plaintiff's first assertion of error with respect to this issue, the ALJ clearly assessed plaintiff's obesity as required under the applicable rules

and regulations. The undersigned also finds that the ALJ did incorporate a limitation due, at least in part, to plaintiff's obesity by limiting plaintiff to medium work. Although the ALJ does not specifically state that obesity is the reason for limiting plaintiff to medium work, following the ALJ's reasoning here is not difficult.

While most of plaintiff's argument focuses on the ALJ's failure to follow the proper procedure in assessing plaintiff's obesity, plaintiff also makes a brief, superficial argument challenging the substance of the ALJ's decision. (Dkt. 15). Plaintiff states that the consideration of obesity "is especially relevant as the Plaintiff had had multiple surgeries on her feet due to malformation and/or diabetes." *Id.* at 3. After reviewing the medical records, the undersigned finds that plaintiff misstates the record. In December 2011 and September 2013, plaintiff underwent two office procedures to remove ingrown toenails. (R. 511,518,520, 600, 691). Nothing in the record indicates that these ingrown toenails occurred due to plaintiff's obesity or diabetes, and plaintiff recovered from the procedures with no complications. *Id.*

Because the ALJ gave proper consideration to plaintiff's obesity, the undersigned recommends a finding of no error on this issue.

**B.   Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in weighing the medical opinion evidence. (Dkt. 15). The ALJ primarily relied on the non-examining agency physicians who conducted the review of plaintiff's medical records at the reconsideration level, giving them "moderate weight" and finding that their opinions were supported by

substantial evidence. (R. 104-05). Plaintiff contends that substantial evidence does not support these opinions because they were rendered in April 2014 and do not include consideration of the subsequent medical records contained in Exhibits 14F-22F of the administrative record. (Dkt. 15). Plaintiff argues that, as a result of the ALJ's reliance on these early medical opinions, the ALJ also failed to consider plaintiff's issues with her left hand, fingers, and elbow and her mental health limitations, including the opinions of Drs. Charles van Tuyl and Peter Ciali. *Id.* Plaintiff argues that the ALJ is picking and choosing the evidence. *Id.*

Plaintiff essentially argues that the RFC is not linked to the medical evidence because the ALJ relied most heavily on opinions rendered early in the administrative review process and ignored subsequent evidence of additional impairments. However, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. '[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.'" Chapo v. Astrue, 682 F.3d 1285, 1288-89 (citing Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004) (citations omitted) (10th Cir. 2012). The Tenth Circuit also does not require "specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." Id. at 1289 (citations omitted). Accordingly, the fact that the ALJ gave the greatest weight to the April 2014 agency opinions is not error in and of itself.

The ALJ did not ignore the evidence of plaintiff's complaints of left arm, hand, and finger impairments. At step two, the ALJ discussed, in great detail, the

10

consultative examiner's report and Dr. Ramos-Fast's treatment notes. The ALJ relied on the consultative examiner's opinion that plaintiff had "a history of carpal tunnel syndrome," which he assessed as "more likely consistent with a peripheral neuropathy given the history of trauma to the wrist" than a condition associated with plaintiff's diabetes. (R. 94). The ALJ also noted Dr. Ramos-Fast's examination notes from December 2011, in which plaintiff complained of left wrist pain. *Id.* In both cases, however, plaintiff's complaints of pain did not result in any limitations. The consultative examining physician found that plaintiff had normal grip strength and fine tactile manipulation. *Id.* Dr. Ramos-Fast also found no functional limitations in the left arm. *Id.* The ALJ cited subsequent treatment notes from Dr. Ramos-Fast in April 2013, August 2013, and June 2014, in which plaintiff's examinations were normal. *Id.* Based on this evidence, the ALJ determined that plaintiff's left arm impairments were non-severe and did not impose more than minimal limitations on plaintiff's ability to function. *Id.* To the extent that plaintiff challenges the evidentiary basis for the RFC findings, the undersigned finds that substantial evidence supports the ALJ's conclusion that plaintiff's left arm impairments were non-severe.

With respect to plaintiff's mental health issues, plaintiff contends that the ALJ should have relied on the consultative psychological examiner's opinion that plaintiff could not manage her own funds and Dr. van Tuyl's opinion that plaintiff could not work rather than the agency psychologists who rendered their opinions in April 2014. (Dkt. 15). In this instance, plaintiff is asking the Court to reweigh the evidence. The ALJ discussed Dr. van Tuyl's treatment notes in great detail and

evaluated Dr. van Tuyl's two written opinions that plaintiff could not work due to emotional instability. (R. 102-05). The ALJ properly determined that Dr. van Tuyl's opinions could not be given controlling weight because they opined on an issue reserved to the Commissioner. (R. 104). The ALJ then properly considered what weight should be given to those opinions in light of the evidence in the record as a whole. *Id.* The ALJ determined that Dr. van Tuyl's opinions were inconsistent with the treatment records and with the other medical opinion evidence in the record. *Id.* Plaintiff has not challenged the substance of the ALJ's analysis.

The consultative examining psychologist's opinion is not evidence that undermines the ALJ's RFC. Contrary to plaintiff's assertion that the ALJ ignored the evidence of plaintiff's inability to manage her funds, the ALJ did discuss that opinion. (R. 105). In fact, at step two, the ALJ notes the psychologist's report that plaintiff does not handle her own money. (R. 97). In the RFC analysis, the ALJ relied on the psychologist's determination that plaintiff has moderate mental limitations based on her GAF score and reported activities of daily living. (R. 105). The ALJ again mentions that the consultative examining psychologist found plaintiff could not "manage her financial affairs independently in her own best interest," but the ALJ does not discuss how that evidence impacts the RFC analysis. (R. 105). However, the fact that the ALJ did not discuss the psychologist's conclusion regarding plaintiff's ability to manage her funds in the RFC analysis is not reversible error.[3] The Tenth Circuit has "repeatedly held that

---

[3] Although the Court cannot engage in *post hoc* rationalization to affirm the ALJ's decision, the undersigned notes that the consultative examining psychologist's opinion regarding plaintiff's ability to manage her own funds

12

while an ALJ must consider all of the evidence in the record, nothing required the discussion of every piece of evidence." *Sullivan v. Colvin,* 519 F. App'x 985, 989 (10th Cir. 2013) (citing *Clifton v. Chater,* 73 F.3d 1007, 1009-10 (10th Cir. 1996). The undersigned is satisfied that the ALJ gave due consideration to the medical evidence and that her RFC is supported by substantial evidence.

**C.     Credibility**

Plaintiff argues that the ALJ's credibility analysis requires reversal because it fails to address those pieces of evidence that support plaintiff's testimony and allegations of disability. (Dkt. 15). Plaintiff also argues that the ALJ placed too much emphasis on plaintiff's reported activities of daily living, which plaintiff contends are insufficient to support a finding that she can work forty hours per week. *Id.*

This Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." *Cowan v. Astrue,* 552 F.3d 1182, 1190 (10th Cir.2008) (citing *Diaz v. Secretary of Health & Human Svcs.,* 898 F.2d 774, 777 (10th Cir.1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (citing *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir.1988) (footnote omitted)). The

---

independently is irrelevant to the question of her disability. Plaintiff told the examining psychologist that she had not managed her own funds since high school because she would lose money and forget to pay her bills. (R. 666). Plaintiff graduated from high school in 2000, many years before her alleged disability onset date. *Id.* Accordingly, her inability to handle money is not rooted in her allegedly disabling impairments.

ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts ... to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, ... and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir.1995).

Plaintiff's argument is nothing more than an invitation to re-weigh the evidence. The ALJ conducted an extensive credibility analysis in conjunction with her review of the medical evidence. (R. 99-105). The ALJ relied on plaintiff's sporadic work history and reports of normal activities of daily living in finding plaintiff not credible, but the ALJ's credibility analysis relies almost entirely on the medical evidence. The ALJ concluded that the medical evidence was inconsistent with plaintiff's allegations of disabling impairments, and that conclusion is supported by substantial evidence. Accordingly, the undersigned finds that the ALJ's credibility analysis was sufficient.

## IV. Conclusion

For the reasons set forth above, the undersigned recommends that the decision of the Commissioner finding plaintiff is not disabled be AFFIRMED.

## V. Objections

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation, but must do so by September 29, 2017.  If specific written objections are timely filed, the

District Judge assigned to this case will make a *de novo* determination in accordance with Rule 72(b).  A party waives District Court review and appellate review by failing to file objections that are timely and sufficiently specific (the "firm waiver rule").  *Moore v. Astrue,* 491 F. App'x 921, 923 (10th Cir. 2012) (unpublished) (citing *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996)).

    ENTERED this 15th day of September, 2017.

_____
Paul J. Cleary
United States Magistrate Judge